UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY
CENTRAL DIVISION
(at Lexington)

| | | |
|---|---|---|
| CHRISTOVERO, LLC, | ) | |
| | ) | |
| Plaintiff, | ) | Civil Action No. 5:25-CV-00364-CHB |
| | ) | |
| v. | ) | |
| | ) | |
| SANGUIS DIAGNOSTICS | ) | **MEMORANDUM OPINION AND** |
| CORPORATION, | ) | **ORDER** |
| *d/b/a*, WELLNESS READY, *et al.*, | ) | |
| | ) | |
| Defendants. | ) | |

\*\*\*    \*\*\*    \*\*\*    \*\*\*

This matter is before the Court on Defendants Vernon Dryden's and Patrick Lawless's Partial Motions to Dismiss Count V of the Verified Complaint. [R. 13]; [R. 17]. Plaintiff Christovero, LLC filed a combined response to both motions, [R. 20], and Defendants each filed individual replies in support of their motions, [R. 21]; [R. 22]. These motions are ripe for review. For the following reasons, the Court will grant Defendants' motions and dismiss Count V of the Verified Complaint.

## I.    BACKGROUND

Defendant Sanguis Diagnostics Corporation ("Sanguis") was formed under Delaware law in 2019 by Dryden and Lawless. [R. 1, ¶ 8–11]. From its inception until December 2023, Lawless served as the President, CEO, and a Director of Sanguis. *Id.* at ¶ 12. During that time, Dryden served as the Secretary, Chief Medical Officer, and a Director. *Id.* at ¶ 13. To get this company off the ground, Plaintiff provided Sanguis with a $3,000,000 loan. *Id.* at ¶ 14–21. During Lawless's tenure as President and CEO, he allegedly engaged in self-dealing and mismanagement of Sanguis.

*Id.* at ¶ 30–39. These actions were allegedly a direct and proximate cause for Sanguis's eventual insolvency and default on the $3,000,000 promissory note. *Id.* at. ¶ 22–29, 31. After discovery of Lawless's actions, Dryden took over Lawless's role as President and CEO. *Id.* at ¶ 13.

On October 6, 2025, Plaintiff brought this case alleging various claims. *See id.* at 12–18. In Counts I through III, Plaintiff brings direct claims against Sanguis through which Plaintiff seeks to collect on the $3,000,000 promissory note. *See id.* at 12–16 (Count I: breach of contract; Count II: unjust enrichment; Count III: declaratory judgment). In Count IV, Plaintiff asserts a direct veil piercing, breach of contract and unjust enrichment claim against Dryden and Lawless. *Id.* at 16–17. Lastly, Count V states Plaintiff's derivative breach of fiduciary duty claim, brought on behalf of Sanguis and against Dryden and Lawless. *Id.* at 17–18.

In November and December 2025, Dryden and Lawless filed separate Partial Motions to Dismiss Count V of the Verified Complain. [R. 13]; [R. 17]. Plaintiff Christovero, LLC filed a combined response to both motions, [R. 20], and Defendants each filed individual replies in support of their motions, [R. 21]; [R. 22].  The matter stands submitted for review.

## II.    LEGAL STANDARD

### A.    Lack of Subject Matter Jurisdiction

Pursuant to Federal Rule of Civil Procedure 12(b)(1), a party may seek the dismissal of an action for lack of subject matter jurisdiction. The moving party may either attack the claim of jurisdiction on its face, as is the case here, or it can attack the factual basis of jurisdiction. *Golden v. Gorno Bros.*, 410 F.3d 879, 881 (6th Cir. 2005). A facial attack "questions merely the sufficiency of the pleading." *O'Bryan v. Holy See*, 556 F.3d 361, 375 (6th Cir. 2009). "A facial attack goes to the question of whether the plaintiff has alleged a basis for subject matter jurisdiction, and the

court takes the allegations of the complaint as true for purposes of Rule 12(b)(1) analysis." *Cartwright v. Garner*, 751 F.3d 752, 759 (6th Cir. 2014).

Alternatively, a factual attack challenges the factual existence of subject matter jurisdiction. *Id.* In the case of a factual attack, a court has broad discretion with respect to what evidence to consider in deciding whether subject matter jurisdiction exists, including evidence outside of the pleadings, and has the power to weigh the evidence and determine the effect of that evidence on the court's authority to hear the case. *United States v. Ritchie*, 15 F.3d 592, 598 (6th Cir. 1994).

Importantly, when faced with a Rule 12(b)(1) challenge, the plaintiff bears the burden of establishing subject-matter jurisdiction in order to survive the motion. *Moir v. Greater Cleveland Reg'l Transit Auth.*, 895 F.2d 266, 269 (6th Cir. 1990). The plaintiff cannot meet this burden through unsupported assertions, as "conclusory allegations or legal conclusions masquerading as factual conclusions will not suffice to prevent a motion to dismiss." *O'Bryan*, 556 F.3d at 376 (citations omitted).

### B.    Failure to State a Claim

Under Federal Rule of Civil Procedure 12(b)(6), a party may move for dismissal for "failure to state a claim upon which relief may be granted." To survive a Rule 12(b)(6) motion to dismiss, "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). A claim is "plausible on its face" if the factual allegations in the complaint "allow the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* (citing *Twombly*, 550 U.S. at 556). This standard "is not akin to a 'probability requirement,' but it asks for more than a sheer possibility

that a defendant has acted unlawfully." *Id.* (citing *Twombly*, 550 U.S. at 556). "Where a complaint pleads facts that are 'merely consistent with' a defendant's liability, it 'stops short of the line between possibility and plausibility of entitlement to relief.'" *Id.* (quoting *Twombly*, 550 U.S. at 557) (internal quotation marks omitted). "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Id.* (citing *Twombly*, 550 U.S. at 555).

Determining if a complaint sufficiently alleges a plausible claim for relief is "a context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Id.* at 679 (citation omitted). Further, "[t]he complaint is viewed in the light most favorable to [Plaintiff], the allegations in the complaint are accepted as true, and all reasonable inferences are drawn in [Plaintiff's] favor." *Gavitt v. Born*, 835 F.3d 623, 639–40 (6th Cir. 2016) (citing *Jelovsek v. Bredesen*, 545 F.3d 431, 434 (6th Cir. 2008)).

### III.    ANALYSIS

Dryden and Lawless filed separate motions and replies that have significant overlap in terms of factual and legal arguments. *See* [R. 13]; [R. 17]; [R. 21]; [R. 22]. Accordingly, the Court will consider and discuss them conjointly. Defendants provide the same two reasons why dismissal is warranted for Plaintiff's derivative breach of fiduciary duty claim (Count V) brought on behalf of Defendant Sanguis against Dryden and Lawless: (1) Plaintiff cannot fairly and adequately represent the interest of the Sanguis shareholders under Federal Rule of Civil Procedure 23.1, and (2) Plaintiff failed to satisfy the demand requirement before bringing the derivative claim. *See* [R. 13]; [R. 17]. Plaintiff responded in opposition to both of these arguments, [R. 20], and Defendants individually replied, [R. 21]; [R. 22]. As explained below, the Court agrees with Defendants that Count V must be dismissed under Rule 23.1 because Plaintiff cannot fairly and adequately represent the interest of the Sanguis shareholders.

- 4 -

Under Rule 23.1(a), a "derivative action may not be maintained if it appears that the plaintiff does not fairly and adequately represent the interests of shareholders or members who are similarly situated in enforcing the right of the corporation or association." "Federal law governs the determination of 'whether a particular shareholder meets the adequacy-of-representation requirement.'"[1] *C-Ville Fabricating, Inc. v. Tarter*, No. CV 5:18-379-KKC, 2020 WL 855959, at *3 n.6 (E.D. Ky. Feb. 20, 2020) (citing 7C Charles Alan Wright & Arthur R. Miller, FEDERAL PRACTICE AND PROCEDURE § 1833 (3d ed. 2008)). Failure to satisfy Rule 23.1's statutory prerequisites warrants dismissal.[2] *See, e.g.*, *C-Ville Fabricating*, 2020 WL 855959, at *5; *Smith v. Tarter*, 305 F. Supp. 3d 733, 744 (E.D. Ky. 2018). Some courts have found that defendants challenging a derivative claim bear the burden of showing that the plaintiff cannot fairly and adequately represent the interests of the shareholders or of the corporation. *See, e.g.*, *ShoreGood*

---

[1] Typically, Rule 23.1(b)(1) requires "that the plaintiff was a shareholder or member at the time of the transaction complained of." However, federal courts have applied the Delaware equitable doctrine that recognizes creditor standing to bring a derivative suit under Rule 23.1 when a corporation is insolvent. *See, e.g.*, *Torch Liquidating Tr. ex rel. Bridge Assocs. L.L.C. v. Stockstill*, 561 F.3d 377, 385 (5th Cir. 2009); *Richter v. CC-Palo Alto, Inc.*, No. 5:14-CV-00750-EJD, 2017 WL 4236992, at *6 (N.D. Cal. Sept. 25, 2017). While Defendants argue that Plaintiff is not a fair and accurate representative, they do not challenge creditor standing under the Delaware doctrine or argue that this doctrine is inapplicable. *See generally* [R. 13]; [R. 17]; [R. 21]; [R. 22]. Since the Court ultimately agrees with Defendants that Count V must be dismissed because Plaintiff cannot serve as a fair and adequate representative, the Court need not address this issue. Instead, the Court will assume without deciding that, as a threshold matter, Plaintiff's sole status as a creditor does not preclude it from bringing this derivative claim under Rule 23.1(b)(1).

[2] Courts are split on whether Rule 12(b)(1) or 12(b)(6) is the proper vehicle in considering whether a party is a fair and adequate representative under Rule 23.1. As previously described by this Court:

> The Sixth Circuit's view is not entirely clear. In *Loren v. Blue Cross & Blue Shield of Mich.*, that court held that "a plaintiff must possess both constitutional and statutory standing in order for a federal court to have jurisdiction." 505 F.3d 598, 606 (6th Cir. 2007) (citation omitted). In *Roberts v. Hamer*, however, the Sixth Circuit admonished the litigants for having "confused the questions of constitutional and prudential standing with *statutory* standing," noting that question of statutory standing "is closely related to the merits inquiry (oftentimes overlapping it) and is analytically distinct from the question whether a federal court has subject-matter jurisdiction to decide the merits of a case." 655 F.3d 578, 580 (6th Cir. 2011) (citations omitted) (emphasis in original). The *Hamer* court held that, "[w]here a plaintiff lacks statutory standing to sue, her claim should be dismissed for failure to state a claim upon which relief can be granted, not for lack of subject-matter jurisdiction." *Id.* at 581.

*C-Ville Fabricating*, 2020 WL 855959, at *3 n.5. Further, the standard under Rule 12(b)(6) and a facial attack under Rule 12(b)(1) are essentially the same. *See McCormick v. Mia. Univ.*, 693 F.3d 654, 658 (6th Cir. 2012); *Fenn v. Philips Elecs. N. Am. Corp.*, No. CIV.A. 14-96-DLB-JGW, 2015 WL 632154, at *2 (E.D. Ky. Feb. 13, 2015) (citing *United States v. Ritchie*, 15 F.3d 592, 598 (6th Cir.1994)).

*Water Co. v. U.S. Bottling Co.*, No. CIV.A. RDB08-2470, 2009 WL 2461689, at *4 (D. Md. Aug. 10, 2009) (citing *Smallwood v. Pearl Brewing Co.*, 489 F.2d 579, 592 n.15 (5th Cir. 1974)); *Field Turf Builders, LLC v. FieldTurf USA, Inc.*, No. CIV 09-671-HA, 2010 WL 817628, at *3 (D. Or. Mar. 4, 2010); *Srebnik v. Dean*, No. CIVA 05CV01086WYDMJW, 2006 WL 2457386, at *3 (D. Colo. Aug. 22, 2006); *Vance as Tr. of Stephen M. Vance Revocable Tr. v. Vance*, No. 19-CV-1136-EFM, 2023 WL 5929461, at *8 (D. Kan. Sept. 12, 2023). However, courts which have viewed Rule 23.1's prerequisites as an issue of Article III standing have understandably placed the burden on the plaintiff. *See, e.g.*, *Richter v. CC-Palo Alto, Inc.*, No. 5:14-CV-00750-EJD, 2017 WL 4236992, at *6 (N.D. Cal. Sept. 25, 2017); *C-Ville Fabricating*, 2020 WL 855959, at *3–*4. For purposes of this analysis, the Court will assume without deciding that it is Defendants' burden to bear under Rule 23.1.

Sixth Circuit precedent outlines eight factors to consider when determining if a plaintiff is a fair and adequate representative: (1) "economic antagonisms between representative and class;" (2) "the remedy sought by plaintiff in the derivative action;" (3) "indications that the named plaintiff was not the driving force behind the litigation;" (4) "plaintiff's unfamiliarity with the litigation;" (5) "other litigation pending between the plaintiff and defendants;" (6) "the relative magnitude of plaintiff's personal interests as compared to his interest in the derivative action itself;" (7) "plaintiff's vindictiveness toward the defendants;" and (8) "the degree of support plaintiff was receiving from the shareholders he purported to represent." *Davis v. Comed, Inc.*, 619 F.2d 588, 593–94 (6th Cir. 1980). Although courts often look to a combination of these factors, "a strong showing of one way in which the plaintiff's interests are actually inimical to those he is supposed to represent fairly and adequately, will suffice in reaching such a conclusion." *Id.* at 593.

Defendants principally point to the fact that Plaintiff is directly suing Sanguis through Counts I through III while simultaneously seeking to derivatively sue on Sanguis's behalf through Count V for why Plaintiff cannot serve as a fair and adequate representative. [R. 13, pp. 5–7]; [R. 17, pp. 4–5]. Defendants argue that the *Davis* factors (1) (adverse economic interest), (5) (other litigation), and (6) (plaintiff's personal interest) all strongly counsel against Plaintiff's fairness and adequacy under Rule 23.1. [R. 13, p. 6]; [R. 17, p. 5]. Put simply, "Christovero cannot adequately represent the interests of Sanguis while simultaneously attacking it." [R. 13, p. 6].

In its response, Plaintiff first argues that there is no per se rule that a plaintiff cannot bring both direct and derivative claims under Rule 23.1. [R. 20, p. 8–10]. In support of this assertion, Plaintiff cites four district court cases that purportedly stand for this proposition. *Id.* at 8–9 (citing *Field Turf Builders*, 2010 WL 817628, at *3; *Natomas Gardens Inv. Grp. LLC v. Sinadinos*, No. CIV.S-08-2308FCD/KJM, 2009 WL 1363382, at *15 (E.D. Cal. May 12, 2009); *Srebnik*, 2006 WL 2457386, at *2; *Richter*, 2017 WL 4236992, at *8). However, none of these cases serves as a meaningful analogue to the present conflict. Some of these cases involved direct claims brought against the individuals that the derivative claims also targeted, rather than direct claims against the entity that the derivative claim was brought on behalf of. *See Natomas Gardens*, 2009 WL 1363382, at *1–*5, *15; *Natomas Gardens*, No. CIV.S-08-2308FCD/KJM, [R. 5 (First Amended Complaint)] (E.D. Cal. Nov. 4, 2008); *Srebnik*, 2006 WL 2457386, at *1–*2; *Srebnik*, No. CIVA 05CV01086WYDMJW, [R. 101 (First Amended Complaint)] (D. Colo. Nov. 21, 2005). The other cases presented meaningfully different considerations not applicable here. *See Field Turf Builders*, 2010 WL 817628, at *3 (noting that no conflict has yet emerged because the parties bringing the direct and derivative claims "are not only uniquely situated to bring their derivative claim, but are also the only shareholders willing to seek relief on behalf of the allegedly harmed companies");

*Richter*, 2017 WL 4236992, at *8 (finding that direct class action claims and derivative claims did not conflict because "those interests coincide" based on the fact that "Plaintiffs seek relief on behalf of the same individuals" in both sets of claims).

Conversely, courts often find that bringing direct claims alongside derivative claims creates a disabling conflict impermissible under Rule 23.1's requirements. *See, e.g.*, *Tuscano v. Tuscano*, 403 F. Supp. 2d 214, 223 (E.D.N.Y. 2005) (stating that "[a]ny individual claims raised by a shareholder in a derivative action present an impermissible conflict of interest"); *id.* (collecting cases). This is especially true when the direct claims are brought against the same entity that the derivative claims are brought on behalf of. *See, e.g.*, *Prime Mover Cap. Partners L.P. v. Elixir Gaming Techs., Inc.*, 898 F. Supp. 2d 673, 692 (S.D.N.Y. 2012), *aff'd*, 548 F. App'x 16 (2d Cir. 2013) ("In their direct claims against EGT, plaintiffs attempt to prove . . . that they, as shareholders, are entitled to damages. At the same time, plaintiffs seek in their derivative claims to stand in the shoes of EGT . . . . This presents a conflict of interest impermissible under [Rule 23.1]."); *Petersen v. Federated Dev. Co.*, 416 F. Supp. 466, 475 n.6 (S.D.N.Y. 1976) ("[Plaintiff is] seeking to recover personally against Federated, and simultaneously, prosecuting a claim on behalf of Federated. This potential conflict of interest has been recognized by the courts in this jurisdiction, with the result that plaintiff must . . . choose between the pursuit of his personal interest and that of the corporation."); *ShoreGood Water*, 2009 WL 2461689, at *5 ("[W]here a derivative action and a plaintiff's individual monetary recovery are in competition for the same pool of money, it makes it further unlikely that plaintiff will be an appropriate derivative plaintiff." (citation and quotation marks omitted)); *see also Vance as Tr.*, 2023 WL 5929461, at *9 (noting the "obvious" conflict in cases that "concern a plaintiff seeking derivative damages from the corporation and direct personal damages from the corporation"); *In re AME Church Emp. Ret.*

- 8 -

*Fund Litig.*, No. 1:22–MD–03035–STA–JAY, 2026 WL 18907, at \*19–\*20 (W.D. Tenn. Jan. 2, 2026) (noting this same conflict).

Turning to the *Davis* factors, the Court agrees with Defendants that those factors strongly counsel in favor of dismissal. Plaintiff's efforts to collect on its $3,000,000 loan through Counts I through III put Plaintiff's economic and personal interests in direct conflict with the interest of other shareholders or even creditors. By bringing Counts I through III and Count V in the same lawsuit, Plaintiff has impermissibly placed itself on both sides of the "v." This is a conflict of interest that Rule 23.1 does not permit. The Court finds that the *Davis* factors (1) (adverse economic interest), (5) (other litigation), and (6) (plaintiff's personal interest) strongly support Defendants' motions. The individual weight and combination of these factors compel the conclusion that Plaintiff cannot fairly and adequately represent the interest of the other shareholders under Rule 23.1.[3]

The *ShoreGood Water* court similarly found a conflict under Rule 23.1 in a case factually analogous to this one. 2009 WL 2461689, at \*5–\*6. The *ShoreGood Water* court noted that

> the crux of Plaintiffs' lawsuit is to recover money allegedly owed—a personal goal focused on an external interest that is at odds with the underlying purpose of a derivative action, which is fiduciary in nature. Plaintiffs seek to recover more than $1.5 million dollars from the individual Defendants and from the spoils of U.S. Bottling, which is now "essentially defunct." As a result, this Court finds that Plaintiffs' personal interests as creditors in their direct claims vastly outweighs Dennis Kellough's desire to protect the interests of U.S. Bottling through a derivative action.

*Id.* at \*6 (citations omitted). The Court finds that the same conflict of interest is present here. Namely, Counts I through III—Plaintiff's direct claims—impermissibly compel Plaintiff to

---

[3] The Court also finds that the remaining *Davis* factors are of little relevance to this case and do not meaningfully weigh in either direction. However, because factors (1), (5), and (6) strongly demonstrate that dismissal is warranted, the Court need not review the remaining *Davis* factors. *See Davis*, 619 F.2d at 593 ("[A] strong showing of one way in which the plaintiff's interests are actually inimical to those he is supposed to represent fairly and adequately, will suffice in reaching such a conclusion.").

prioritize recovery on its $3,000,000 loan over that of the other shareholders or creditors through the derivative claim, Count V. Because there is a "substantial likelihood that the derivative action will be used as a weapon in [Plaintiff's] arsenal," Count V must be dismissed. *Owen v. Mod. Diversified Indus., Inc.*, 643 F.2d 441, 443 (6th Cir. 1981).

Moreover, Plaintiff's direct veil piercing claim against Dryden and Lawless in Count IV of the complaint bolsters the Court's conclusion. *See* [R. 1, pp. 12–13]. In its response, Plaintiff argues the following:

> Without question, the interests of Christovero, likely the largest of Sanguis's creditors, are co-extensive with the class of other creditors whose interests it represents through assertion of the derivative claims. Christovero, just the same as all other creditors, has an interest in seeking the largest recovery possible from Dryden and Lawless through the derivative action so that all creditors can be repaid for the debts owed to them.

[R. 20, p. 11]. Plaintiff's argument that its interests are "co-extensive" with the other shareholders and creditors is undermined by the fact that Plaintiff also seeks to collect directly through its veil-piercing claims in Count IV from the same pool of assets—those owned by Dryden and Lawless—as it purports to derivatively collect on behalf of Sanguis through Count V. Whatever common interests exist are surely compromised by Plaintiff's direct claims against Dryden and Lawless. Given Plaintiff's competing claims in Counts I through III and Count IV, Plaintiff cannot serve as a fair and adequate representative for Sanguis under Rule 23.1.[4]

### IV.    CONCLUSION

For these reasons, the Court will grant Defendants' motions and dismiss Count V of the Verified Complaint. Accordingly, and the Court being otherwise sufficiently advised,

**IT IS HEREBY ORDERED** as follows:

---

[4] Since dismissal is warranted under Defendants' first argument, the Court need not address whether Plaintiff satisfied the demand requirement before bringing this suit.

1.  Defendants Vernon Dryden's and Patrick Lawless's Partial Motions to Dismiss Count V of the Verified Complaint, [**R. 13**]; [**R. 17**], are **GRANTED**. Count V of the Complaint, [R. 1], is **DISMISSED** as to all parties.

This the 22nd day of May, 2026.

CLARIA HORN BOOM,
UNITED STATES DISTRICT COURT JUDGE
EASTERN AND WESTERN DISTRICTS OF
KENTUCKY

- 11 -