UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY
CENTRAL DIVISION
(at Lexington)

| | | |
|---|---|---|
| CHRISTOVERO, LLC,<br><br>Plaintiff,<br><br>v.<br><br>SANGUIS DIAGNOSTICS CORPORATION, *d/b/a*, WELLNESS READY, *et al.*,<br><br>Defendants. | ) | Civil Action No. 5:25-CV-00364-CHB<br><br>**MEMORANDUM OPINION AND ORDER** |

*** *** *** ***

This matter is before the Court on Plaintiff Christovero, LLC's ("Christovero") Motion for Judgment on the Pleadings Respecting Counts I and III of its Complaint Against Sanguis Diagnostics Corporation and the Counterclaim for Declaratory Relief Asserted by Sanguis Diagnostics Corporation Against Plaintiff. [R. 23]. Defendant Sanguis Diagnostics Corporation ("Sanguis") filed a combined response and Counter-Motion of Sanguis for Judgment on the Pleadings. [R. 29].[1] Christovero filed a Reply in Support of Its Motion for Judgment on the Pleadings and Response to Sanguis's Cross-Motion. [R. 27].[2] Sanguis did not file a reply in support of its countermotion. These motions are ripe for review. For the following reasons, the Court will grant Christovero's motion in part, deny Sanguis's countermotion, and enter judgment in Christovero's favor as to Count I of the Verified Complaint for breach of contract, [R. 1, pp. 12–

[1] The Clerk separately filed an identical copy of this entry to separate the response from the countermotion. *See* [R. 26]. For simplicity's sake, hereinafter, the Court will cite only [R. 29] in reference to both Sanguis's response and counter motion.

[2] The Clerk separately filed an identical copy of this entry to separate the reply from the response. *See* [R. 30]. For simplicity's sake, hereinafter, the Court will cite only [R. 27] in reference to both Christovero's reply and response.

13], Count III for declaratory judgment, *id.* at 14–16, as well as Sanguis's Counterclaim for declaratory relief, [R. 7, pp. 19–23]. Lastly, because there is just cause for delay, the Court will deny Christovero's motion to the extent it requests the Court to certify final judgment pursuant to Rule 54(b).

## I. BACKGROUND

Sanguis was formed under Delaware law in 2019 by Defendants Vernon Dryden and Patrick Lawless. [R. 1, ¶ 8–11]; [R. 7, ¶¶ 9–12]. From its inception until December 2023, Lawless served as the President, CEO, and a Director of Sanguis. [R. 1, ¶ 12]; [R. 7, ¶ 13]. During that time, Dryden served as the Secretary, Chief Medical Officer, and a Director. [R. 1, ¶ 13]; [R. 7, ¶ 14]. Both Dryden and Defendant the Lawless Trust were shareholders. [R. 1, ¶¶ 3–4]; [R. 7, ¶¶ 4–5].

In 2019, a former member of Christovero, Fritz Kundrun, agreed to fund Sanguis with up to $3,000,000 to develop and market a stall-side insulin resistance testing solution. [R. 1, ¶ 14]; [R. 7, ¶ 15]; [R. 7-2]; [R. 33-1]. Subsequently, through a series of notes between 2019 and 2022, Sanguis received $3,000,000 in funds from Kundrun to support the creation and commercialization of the stall-side test. [R. 1, ¶ 14]; *see also* [R. 7-2]. The various notes were ultimately assigned by Kundrun to Christovero and memorialized in the Amended and Restated Convertible Unsecured Promissory Note (the "Promissory Note") dated July 27, 2022, evidencing Sanguis's agreement to repay Christovero. [R. 1, ¶ 15]; [R. 1-1 (Promissory Note)]; [R. 7, ¶¶ 15–22]; [R. 7-1]; [R. 7-2]. The Promissory Note had a maturity date of June 1, 2023 (the "Repayment Date") and required the payment of the principal and all accrued and unpaid interest by that date. [R. 1, ¶ 16]; [R. 1-1]; [R. 7-1]. The Promissory Note also provided for a simple interest at a rate of five percent (5%) per annum, [R. 1, ¶ 17]; [R. 1-1]; [R. 7-1], and a default rate of interest of ten percent (10%) per annum

should the Note not be paid within thirty (30) days of the Repayment Date. [R. 1, ¶ 18]; [R. 1-1]; [R. 7-1]. Finally, the Promissory Note required that until the debt was paid in full, Sanguis had to permit Christovero reasonable access to its books and records and abide by certain financial and borrowing restrictions. [R. 1, ¶¶ 20-21]; [R. 1-1]; [R. 7-1].

Christovero alleges that Sanguis failed to make any payments toward the outstanding principal or accrued interest owed under the Promissory Note by the Repayment Date or within thirty (30) days of that date. [R. 1, ¶ 22]. Consequently, Christovero contends that Sanguis is in default of the Promissory Note, *id.* ¶ 23, which has been accruing the default interest rate. *Id.* Christovero also alleges that in a June 23, 2025 correspondence, it requested access to Sanguis's books and records and asked Sanguis to confirm that it had complied with the financial and borrowing restrictions in Section 6 of the Promissory Note. *Id.* ¶¶ 28–29. According to Christovero, Sanguis did not provide access to the full breadth of the books and records Christovero requested or confirm that it had complied with the relevant restrictions. *Id.*

Christovero further claims that Sanguis is insolvent, *id*. ¶ 30, and that its insolvency is a result of mismanagement and breach of fiduciary duty by Lawless and Dryden. *Id.* ¶ 31. Christovero contends that during Lawless's tenure as President and CEO, he engaged in self-dealing and mismanagement of Sanguis. *Id.* ¶¶ 30–39. Similarly, Christovero claims that Dryden breached his duty of loyalty through his failure to exercise oversight over Lawless's actions. *Id.* ¶ 34. Christovero alleges that these actions were a direct and proximate cause for Sanguis's eventual insolvency and default on the $3,000,000 promissory note. *Id.* ¶¶ 22–29, 31.

On October 6, 2025, Christovero brought this case alleging various claims. [R. 1]. In Counts I through III, Christovero brings direct claims against Sanguis, seeking to collect on the $3,000,000 Promissory Note. *See id.* ¶¶ 56–62 (Count I: Breach of Contract); ¶¶ 63–68 (Count II:

Unjust Enrichment); ¶¶ 69–77 (Count III: Declaratory Judgment). In Count IV, Christovero asserts a direct claim for veil piercing, breach of contract and unjust enrichment against Dryden and the Lawless Trust. *Id.* ¶¶ 78–84.[3]

On November 5, 2025, Sanguis filed its Answer and Counterclaim. [R. 7]. Through its Answer and Counterclaim for Declaration of Rights, [R. 7], Sanguis acknowledges the underlying relationships between the parties, as well as many of the facts and terms concerning the Promissory Note. *Id.*; [R. 7-1]; [R. 7-2]. Central to this dispute, however, Sanguis contends that the Promissory Note contained a condition precedent making its repayment obligations conditional on it first becoming profitable. [R. 7, ¶¶ 15–23]. In its Counterclaim for Declaratory Relief, [R. 7, pp. 19–23, ¶¶ 1–17], Sanguis seeks a declaration that the Promissory Note is unenforceable because it has not yet achieved profitability. *Id.*

On March 6, 2026, Christovero filed its Motion for Judgment on the Pleadings Respecting Counts I and III of its Complaint Against Sanguis Diagnostics Corporation and the Counterclaim for Declaratory Relief Asserted by Sanguis Diagnostics Corporation Against Plaintiff. [R. 23]. Sanguis thereafter filed a combined response and Counter-Motion for Judgment on the Pleadings seeking a declaratory judgment that the Promissory Note is unenforceable because Sanguis has not yet achieved profitability, which Sanguis claims is a condition precedent to its repayment obligations. [R. 29]. Christovero filed a Reply in Support of Its Motion for Judgment on the Pleadings and Response to Sanguis's Cross-Motion. [R. 27]. Sanguis did not file a reply in support of its countermotion. The matter stands submitted for review.

---

[3] The Court previously dismissed Count V, which was Christovero's derivative breach of fiduciary duty claim, brought on behalf of Sanguis and against Dryden and Lawless. [R. 32].

## II. LEGAL STANDARD

Rule 12(c) of the Federal Rules of Civil Procedure provides that, "[a]fter the pleadings are closed—but early enough not to delay trial—a party may move for judgment on the pleadings." Fed. R. Civ. P. 12(c). The district court reviews a 12(c) motion for judgment on the pleadings under the same standard as a 12(b)(6) motion to dismiss, applying the pleading standards set forth in *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544 (2007), and *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). *Metris-Shamoon v. City of Detroit*, 545 F. Supp. 3d 506 (E.D. Mich. 2021) (citing *Hayward v. Cleveland Clinic Found.*, 759 F.3d 601, 608 (6th Cir. 2014)).

"'For purposes of a motion for judgment on the pleadings, all well-pleaded material allegations of the pleadings of the opposing party must be taken as true, and the motion may be granted only if the moving party is nevertheless clearly entitled to judgment.'" *JPMorgan Chase Bank, N.A. v. Winget*, 510 F.3d 577, 581 (6th Cir. 2007) (quoting *S. Ohio Bank v. Merrill Lynch, Pierce, Fenner & Smith, Inc.*, 479 F.2d 478, 480 (6th Cir. 1973)). "[A] court evaluating a motion for judgment on the pleadings (or a motion to dismiss) must focus only on the allegations in the pleadings," and thus cannot consider matters outside of the pleadings. *Bates v. Green Farms Condo. Ass'n*, 958 F.3d 470, 483 (6th Cir. 2020) (citations omitted).[4] Ultimately, a motion brought pursuant to Rule 12(c) is properly granted when the pleadings, accepted as true, present "no

---

[4] In evaluating a motion for judgment on the pleadings, the Court may consider documents attached to the pleadings and referenced therein without converting the motion to a motion for summary judgment. *Clark v. Stone*, 998 F.3d 287, 296–97 (6th Cir. 2021); *see also Kreipke v. Wayne State Univ*., 807 F.3d 768, 774 (6th Cir. 2015) ("In reviewing a motion to dismiss the Court 'may consider the [c]omplaint and any exhibits attached thereto, public records, items appearing in the record of the case, and exhibits attached to the defendant's motion to dismiss so long as they are referred to in the [c]omplaint and are central to the claims contained therein.'" (quoting *Basset v. Nat'l Collegiate Athletic Ass'n*., 528 F.3d 426, 430 (6th Cir. 2008))). Here, both parties have attached the Promissory Note to their pleadings, [R. 1-1]; [R. 7-1], the Answer attaches the underlying notes, [R. 7-2], and both parties cite to the Promissory Notes and underlying notes. [R. 1]; [R. 7]. Additionally, neither party argues that the Court must convert the opposing motions for judgment on the pleading to motions for summary judgment. Accordingly, the Court, in considering the Rule 12(c) cross-motions, can consider the Promissory Note and underlying notes without converting the cross-motions for judgment on the pleadings into motions for summary judgment. *See Clark*, 998 F.3d at 296–97.

material issue of fact . . . and the party making the motion is entitled to judgment as a matter of law." *JPMorgan Chase Bank*, 510 F.3d at 582 (internal quotation marks and citation omitted). Thus, when a defendant files a motion for judgment on the pleadings, the court must take all well-pleaded allegations in the complaint as true. *See id.* at 581. However, "[w]hen the plaintiff, as opposed to the defendant, moves for judgment on the pleadings, instead of asking whether the 'complaint . . . contain[s] sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face,'" courts should instead "ask 'whether the plaintiff's petition, stripped of those allegations which are denied by the defendant's answer, would leave the petition stating a cause of action against the defendant.'" *United Food & Commercial Workers, Local 1995 v. Kroger Co.*, 51 F.4th 197, 202 (6th Cir. 2022) (first quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009), then quoting 61A Am. Jur. 2d Pleading § 497) (cleaned up). Finally, when parties file cross-motions for judgment on the pleadings, the Court considers each motion separately, taking all well-pleaded material allegations of the pleadings of the opposing party as true. *See Sparks v. Fitzhugh*, No. 1:22-cv-638, 2025 WL 1018819, at *9–10 (N.D. Ohio Apr. 4, 2025) (evaluating cross-motions for judgment on the pleadings separately).

## III. ANALYSIS

### A. Count I, Breach of Contract

Christovero argues that, under the plain terms of the Promissory Note, Sanguis was obligated to repay Christovero for the principal of the loan plus interest by June 1, 2023, the Repayment Date, and that because Sanguis failed to make this payment, Christovero is entitled to collect on the Promissory Note, including all accrued and unpaid interest. [R. 23, pp. 8–14]. In its response and countermotion, Sanguis argues that its repayment obligation under the Promissory Note was conditional on Sanguis first obtaining sufficient profitability and cashflow; that is,

Sanguis argues there was a condition precedent to its repayment obligation that was never achieved. [R. 29, pp. 11–15]. In reply, Christovero reasserted that the terms of the Promissory Note did not make Sanguis's obligation conditional on solvency. [R. 27, pp. 2–6]. Sanguis did not file a reply in support of its countermotion. As explained below, the Court agrees with Christovero that the plain terms of the Promissory Note contained no such condition precedent to Sanguis's repayment obligation.

Under Kentucky law,[5] "[T]he construction and interpretation of a contract, including questions regarding ambiguity, are questions of law to be decided by the court." *Frear v. P.T.A. Industries, Inc.*, 103 S.W.3d 99, 105 (Ky. 2003) (citations and internal quotation marks omitted). "In the absence of ambiguity a written instrument will be enforced strictly according to its terms, and a court will interpret the contract's terms by assigning language its ordinary meaning and without resort to extrinsic evidence." *Id.* at 106 (alteration in original) (citations and internal quotation marks omitted); *Mostert v. Mostert Grp., LLC*, 606 S.W.3d 87, 91 (Ky. 2020) ("Judicial review of a contract begins with examination of the plain language of the instrument. 'Generally, . . . in construing contracts courts endeavor to give effect to the parties' intent as expressed by the ordinary meaning of the language they employed.'" (alteration in original) (quoting *North Fork Collieries, LLC v. Hall*, 322 S.W.3d 98, 105 (Ky. 2010))); *Abney v. Nationwide Mut. Ins. Co.*, 215 S.W.3d 699, 703 (Ky. 2006) ("As with contracts generally, the courts must look to the language of the [agreement] to determine the parties' intentions. When no ambiguity exists in the contract, we look only as far as the four corners of the document to determine that intent." (internal citations omitted)).

---

[5] Section 7(f) of the Promissory Note provides that it "shall be governed by and construed in accordance with and under the laws of the state of Kentucky applicable to contracts wholly made and performed in such state." [R. 1-1, p. 3]. Both sides agree that Kentucky law governs the Court's substantive analysis. [R. 23, p. 8]; [R. 29, p. 9].

The Promissory Note provides that the "Debtor" or "Company," defined as Sanguis, "promises to pay to the order of CHRISTOVERO, LLC," defined as the "Lender," the principal sum of $3,000,000, as well as interest calculated at a rate of 5% per annum, as defined by Section 2 of the Promissory Note. [R. 1-1, p. 1]. Further, Section 1 of the Promissory Note, titled "Maturity," states the following:

> Maturity. To the extent not previously converted in accordance with Section 4 of this Note, Debtor shall repay the unpaid principal in full, together with all accrued and unpaid interest thereon, on June 1, 2023 (the "Repayment Date"). All payments under this Note shall be made in lawful money of the United States to Lender at an address to be designated by Lender by written notice to Debtor on or prior to the Repayment Date. All payments on the Notes shall be made pro rata based on the principal amount thereof outstanding on the date of payment and shall be applied first against costs of collection (if any), then against accrued and unpaid interest, then against principal.

*Id.* Section 2 of the Promissory Note provides that simple interest will accrue "at the rate of five percent (5.0%) per annum" on the unpaid principal balance of the Note, "commencing on the dates of the respective original notes set forth above and continuing until repayment of [the] Note." *Id.* Section 5 of the Promissory Note further provided that Sanguis's failure to pay the principal and interest owed within thirty days of the Repayment Date would trigger a "Default Rate" of interest equal to 10% per annum, compounded monthly, on the unpaid principal balance. *Id.* at 2. Christovero seeks a judgment in the total amount of $4,296,216.13 as of February 27, 2026, comprised of $3,000,000 principal, term interest in the amount of $383,726.21, and default interest of $912,489.92. [R. 23-1, pp. 1-3].

Sanguis does not dispute that the Promissory Note's language quoted above, by itself, creates an obligation for it to repay the $3,000,000 loan, plus interest, by June 1, 2023. *See* [R. 7, pp. 4–6, ¶¶ 16–23 (stating that the payment terms "speak for themselves")]. Nor does Sanguis dispute that it failed to repay the Promissory Note by that date. *See id.* Similarly, Sanguis does not

contest the simple interest rate, default rate of interest, or Christovero's calculation of the amount of principal and interest due and owing under the Promissory Note. *Id.* at ¶¶ 18–19; *see also* [R. 23-1]. Instead, as Sanguis contends in its response and countermotion, "this case turns upon an interpretation of Section 7(i)" of the Promissory Note. [R. 29, p. 6]. Section 7(i), part of the "Miscellaneous" terms of the Promissory Note, reads as follows:

> The Lender acknowledges that its loan to and any subsequent investment in the shares of Sanguis Diagnostics Corporation is highly speculative and involves a high degree of risk. The securities are unregistered. The Lender acknowledges that there is no assurance that the debtor will achieve profitability or have cash flow to repay this Note. The Lender acknowledges that the individual owners, officers, and directors of the debtor have not guaranteed and are not personally liable for the repayment of this Note.

[R. 1-1, pp. 3–4]; [R. 7-1, pp. 4–5]. Sanguis asserts that Section 7(i) creates "an express condition precedent to repayment, namely that Sanguis achieve a level of profitability and business operational cash flows sufficient to permit it to perform and timely retire any obligation it might arguably have to Christovero." [R. 29, p. 4]; *see also* [R. 7, p. 21 ("[T]he full and satisfactory performance by Sanguis of any obligations stated in the Agreement . . . is expressly conditioned on Sanguis achieving profitability or reaching a level of business operational cash flows sufficient to permit it to perform and repay any obligation specified in the Agreement.")].

Under Kentucky law, a condition precedent is "[a]n act or event, other than a lapse of time, that must exist or occur before a duty to perform something promised arises." *Superior Steel, Inc. v. Ascent at Roebling's Bridge, LLC*, 540 S.W.3d 770, 785 (Ky. 2017) (quoting *BMD Contractors, Inc. v. Fidelity and Deposit Co. of Maryland*, 679 F.3d 643, 650 (6th Cir. 2012)). "To be considered enforceable, a condition precedent must be clear and it must be shown that the parties have no agreement in the absence of the condition precedent." *Judd v. Bank of Marshall Cnty.*, No. 2005-CA-001862-MR, 2007 WL 1192714, at *2 (Ky. Ct. App. Apr. 6, 2007) (citation omitted); *see also*

*Brown as Tr. of Brown Fam. Tr. v. Witty*, No. 5:21-CV-121-TBR, 2022 WL 2791753, at *6 (W.D. Ky. July 15, 2022) ("Importantly, it must be clear from the language of the contract that the term at issue is in fact a condition precedent."). Unless it is clear "by plain, unambiguous language or by necessary implication," courts generally refrain from construing a term as a condition precedent. *Clarion Mfg. Corp. of Am. v. Justice*, 971 S.W.2d 288, 290 (Ky. 1998) (quoting *A.L. Pickens Co., Inc. v. Youngstown Sheet Tube Co.*, 650 F.2d 118, 121 (6th Cir. 1981)). "This is particularly so when interpreting a stipulation as a condition precedent would work a forfeiture or result in inequitable consequences." *Legacy Dev. Corp. v. Hous. Auth. of Louisville*, No. 2006-CA-000314-MR, 2006 WL 3691198, at *2 (Ky. Ct. App. Dec. 15, 2006) (citation omitted). However, if a condition precedent exists but is not satisfied, "then the contract is not enforceable." *Id.* (citing *In re Big Rivers Elec. Corp.*, 233 B.R. 726, 734 (Bankr. W.D. Ky. 1998)).

Sanguis argues that the language of Section 7(i) makes clear that repayment of the loan was conditional on Sanguis achieving profitability. *See* [R. 29, pp. 11–15]; [R. 7, p. 21]. Christovero argues that, "at best," Section 7(i) stands only to acknowledge "that there is no personal guarantee being provided along with the Note." [R. 23, p. 7]. Sanguis argues in rebuttal that there is "no literal or logical relationship" between the final two sentences of Section 7(i) and that the final acknowledgement of the officers' exemption from liability "does not explain either of the prior two [acknowledgments]." [R. 29, pp. 4–5]. Instead, as Sanguis argues, "the only fair interpretation of the provision, in the context provided, is that profitability and sufficient cash flow to retire the debt was an express precondition to payment." *Id.* at 5. The Court disagrees.

Section 7(i), which is part of the "Miscellaneous" provisions of the Promissory Note, makes clear that it excludes liability for its individual owners, officers, and directors. *See* [R. 1-1, pp. 3–4]; [R. 7-1, pp. 4–5]. The provision first notes the "high degree of risk" involved with the

Promissory Note, then acknowledges that there is no assurance that Sanguis will achieve profitability to pay off its obligation, and concludes with an acknowledgement that its individual owners, officers, and directors are not personally liable for repayment of the Promissory Note. [R. 1-1, pp. 3–4]; [R. 7-1, pp. 4–5]. Despite Sanguis's argument, it appears both plausible and logical that the final two sentences of Section 7(i) *are* connected. Namely, because of the high risk of default on the Promissory Note, the parties chose to make clear that the individual owners, officers, and directors would not be held personally liable to repay it. Regardless, one thing is clear: the Promissory Note contains no solvency condition precedent, as urged by Sanguis.

Even reading each sentence separately and individually, as Sanguis argues should be done, there is still no clear and unambiguous language evidencing a condition precedent. Courts finding conditions precedent consistently do so with language distinctly clearer than the general acknowledgement of risk found in Section 7(i). *See Judd*, 2007 WL 1192714, at *2 (finding a "clear and unambiguous" condition precedent based on the language "[t]his commitment to fund is contingent upon the following . . ."); *Legacy Dev. Corp.*, 2006 WL 3691198, at *1–*2 (finding a condition precedent that a property be "move-in ready" based on the language that "[t]he purchase of the two properties is *contingent on* . . . [unrelated condition]. *In addition*, an interior inspection will be *required* as our goal is to acquire properties that are generally move-in ready" and highlighting the "mandatory nature" of the word "required" (emphasis added)); *Brown*, 2022 WL 2791753, at *7 (noting that the language that "[t]his contract is contingent upon Buyer obtaining a loan" creates a valid condition precedent).

In its response, Sanguis cites two cases to support its argument that Section 7(i) creates a condition precedent for repayment of the Promissory Note. *See* [R. 29, pp. 11–15]. However, those cases both include clearly conditional language, unlike Section 7(i). *Compare* [R. 1-1, pp. 3–4

("The Lender acknowledges that there is no assurance that the debtor will achieve profitability or have cash flow to repay this Note.")], *with Cent. Univ. of Kentucky v. Cox's Ex'r*, 124 S.W. 299, 299–300 (1910) ("I promise to pay to the curators of the Central University of Kentucky one thousand dollars ($1,000.00) to be paid at my death . . . *provided there is enough of my estate not disposed of to meet this subscription*." (emphasis added)), *and Owens v. Curd*, 192 Ky. 146, 232 S.W. 639, 641 (1921) ("[T]o pay him the further sum of four thousand dollars ($4,000) *out of the first profits*." (emphasis added)). As Christovero points out, "the authority cited by Sanguis makes it all the more clear that the language here is not sufficient to make profitability of Sanguis a necessary condition to the obligation of repayment." [R. 27, p. 3]. Sanguis's reliance on these cases is unavailing.

The language of Section 7(i) says nothing about altering the clear payment obligations established in Section 1 and elsewhere of the Promissory Note. *See* [R. 7-1]. If it were in fact making those obligations conditional, we would expect that Section 7(i) would explicitly reference Section 1, as the parties did in multiple other instances. *See, e.g.*, [R. 7-1, p. 2 ("[I]n accordance with Section 2 of this Note.")]; *id.* ("[I]n accordance with Sections 1 through 7 of this Note."); ("[I]n accordance with Section 4 of this Note."); *id.* at 3 ("[S]et forth in Section 2 of this Note."). In fact, we would expect to find this conditional language in Section 1 itself. *See id.* at 2. Moreover, the fact that the language of Section 7(i) makes no attempt to define "profitability" or otherwise explain when conditional repayment would be triggered further demonstrates that the parties did not clearly intend to make repayment conditional on this provision. *See id.* at 4–5.

Given the absence of clear and unambiguous conditional language, and Kentucky law's general disfavor towards conditions precedent, the Court finds that the language of Section 7(i) creates no ambiguity as to the repayment terms and does not constitute a condition precedent. The

Court finds no material issue of fact, and even when accepting all well-pleaded material allegations of Sanguis's pleadings as true, Christovero is entitled to judgment as a matter of law in its favor as to Count I of the Verified Complaint for breach of contract. *See KFC Corp. v. Mott*, No. CIV. A. 3:02CV-146-S, 2003 WL 22709071, at *2–*3 (W.D. Ky. Nov. 17, 2003) (granting a motion for judgment on the pleadings for the defendant's default on a promissory note after the court denied the defendant's principal argument that its nonpayment was excused and the defendant did not "challenge[] the terms of [the] agreements" at issue and did not deny that payments were not made"); *see also Nat'l Diagnostic Imaging, LLC v. Pine Palms Mgmt., LLC*, No. 1:15-cv-1945, 2016 WL 1047235, at *2–*4 (N.D. Ohio Mar. 16, 2016) (granting plaintiff's motion for judgment on the pleadings for breach of contract); *Sparks v. Fifth Third Mortgage Co*., No. 5:17-cv-450-KKC, 2018 WL 6424699, at *1–*4 (E.D. Ky. Dec. 6, 2018) (granting defendant's motion for judgment on the pleadings for breach of contract and interpreting the contract as a matter of law in doing so). Accordingly, the Court will grant Christovero's motion on Count I and enter judgment in the amount of $4,296,216.13 as of February 27, 2026, comprised of $3,000,000 principal, term interest in the amount of $383,726.21, and default interest of $912,489.92.[6] [R. 23-1, pp. 1-3]. Post judgment interest will accrue from the date of the entry of the judgment, "at a rate equal to the weekly average 1-year constant maturity Treasury yield, as published by the Board of Governors of the Federal Reserve System, for the calendar week preceding the date of the judgment." 28 U.S.C. § 1961.

[6] The Court will deny without prejudice the request for attorney fees and will instead address the issue, if renewed, at the conclusion of the case.

### B. Sanguis's Counterclaim and Countermotion for Judgment on the Pleadings

The Court now turns to Sanguis's counterclaim and countermotion for judgment on the pleadings on that claim. Because Sanguis filed a countermotion for judgment on the pleadings, the Court considers Sanguis's countermotion separately and, in doing so, takes all well-pleaded material allegations of the pleadings of the opposing party, Christovero, as true. *See Sparks*, 2025 WL 1018819, at *9–10 (evaluating cross-motions for judgment on the pleadings separately). In both its counterclaim and countermotion, Sanguis seeks a declaratory judgment that the Promissory Note is unenforceable and otherwise does not require repayment until Sanguis achieves profitability. [R. 7, pp. 19-23]; *see also* [R. 29]. Sanguis's counterclaim and countermotion rely on the same condition precedent argument it makes in response to Christovero's motion for judgment on the pleadings, and which the Court has already rejected. [R. 29, p. 4]. Sanguis does not otherwise dispute its obligation under the clear language of the Promissory Note. Thus, for the same reasons the Court grants Christovero's motion on Count I, the Court will deny Sanguis's countermotion and grant Christovero judgment on Sanguis's counterclaim for declaratory relief.

### C. Count III, Declaratory Judgment

Christovero also argues that it is entitled to judgment on the pleadings with respect to Count III of its Complaint, "seeking a declaratory judgment with respect to the Parties' rights and obligations under the Promissory Note until the amounts due thereunder are paid."[7] [R. 23, p. 10].

[7] Christovero brings its declaratory judgment claims pursuant to 28 U.S.C. § 2201. [R. 1, ¶ 75]. Section 2201 gives the Court discretion to "declare the rights and other legal relations of any interested parties seeking such declaration, whether or not further relief is or could be sought." 28 U.S.C. § 2201; *see also Scottsdale Ins. Co. v. Flowers*, 513 F.3d 546, 552 (6th Cir. 2008). The Sixth Circuit in *Grand Trunk* outlined five factors that are relevant to whether courts should exercise jurisdiction under Section 2201. *Grand Trunk Western R.R. Co. v. Consolidated Rail Corp.*, 746 F.2d 323, 326 (6th Cir. 1984). Here, neither party argues that the Court should not exercise its discretion to address Christovero's declaratory judgment claims or Sanguis's counterclaim, and the Court, having considered the various *Grand Trunk* factors, finds it appropriate to address the claims under the Declaratory Judgment Act. *See id.*

Section 6 of the Promissory Note, titled "Covenants," governs this aspect of Christovero's claim. [R. 1-1, pp. 2–3]; [R. 7-1, pp. 3–4]. Section 6(a) details the parties' rights and obligations related to Christovero's access to Sanguis's books and records:

> 6. Covenants. Until the principal amount of this Note and all accrued interest and other amounts due hereunder have been paid in full,
>
> (a) Debtor shall permit Lender and any person Lender may designate to review all feasibility reports, studies, analysis, and all books and records, reports, accounts, and other financial documents of Debtor and to copy the same and to make excerpts therefrom, all at such reasonable times and as often as Lender may reasonably request, so long as such review and copying does not unreasonably interfere with the business of Debtor.

[R. 1-1, p. 2]; [R. 7-1, p. 3].

Section 6(b) prohibits Sanguis from taking certain actions until it has repaid the outstanding principal of the Promissory Note and accrued interest:

> 6. Covenants. Until the principal amount of this Note and all accrued interest and other amounts due hereunder have been paid in full,
>
> . . .
>
> (b) Debtor will not without the prior written consent of Lender, directly or indirectly, (i) pay any dividends or make any distributions on, or repurchase any share of, its capital stock; (ii) create, assume, incur or in any manner become liable for or suffer to exist any indebtedness for money borrowed to any person or entity other than the Lender or any subsequent holders; (iii) create, assume or suffer to exist any security interest, lien, charge or other encumbrance in favor of any individual or entity other than the Lender of any subsequent holders; (iv) approve the voluntary liquidation or dissolution of the Company (or any subsidiary), a sale of all or substantially all of the Company's assets, a merger or consolidation of the Company with any other company, or a lease or exclusive license of the Company's assets; (v) authorize, create (by reclassification or otherwise), or issue any new class or series of shares or debt security; (vi) make any expenditure in excess of Twenty Five Thousand Dollars ($25,000) that is not in compliance with the annual budget approved by the Lender; (vii) approve or enter into any related party transactions (including, but not limited to, any amendment of Company certificate of formation, bylaws, or shareholders agreement).

[R. 1-1, pp. 2–3]; [R. 7-1, pp. 3–4].

The plain terms of Section 6 establish that until all principal and interest are paid under the Promissory Note, Sanguis is obligated to permit Christovero reasonable access to its books and records, Section 6(a), and to refrain from taking certain actions without Christovero's consent, Section 6(b). *See* [R. 7-1, pp. 3–4]. Sanguis does not dispute the terms or obligations of Section 6. *See* [R. 7, ¶¶ 21–22]. Instead, Sanguis asserts that the obligations in the Promissory Note, including the obligations in Section 6, are subject to a condition precedent that never occurred. *See* [R. 7, ¶¶ 71–72]; [R. 29, p. 4]. The Court has already rejected this argument. *See* discussion *supra* Part III.A. (concluding that Sanguis's obligations under the Promissory Note are not subject to a condition precedent). Because the plain language of Section 6 imposes the asserted obligations on Sanguis, and because Sanguis does not otherwise dispute the existence or scope of these obligations, there is no dispute of fact on this issue. Accordingly, Christovero's motion for judgment on the pleadings on Count III of its claim is granted, and it is entitled to a declaration that Sanguis is obligated to comply with Section 6 of the Promissory Note.[8]

### D. Judgment under Rule 54(b)

"Rule 54(b) of the Federal Rules of Civil Procedure permits immediate review of certain district court orders prior to the ultimate disposition of a case." *Gen. Acquisition, Inc. v. GenCorp, Inc.*, 23 F.3d 1022, 1026 (6th Cir. 1994). It is "designed to facilitate the entry of judgment on one or more claims, or as to one or more parties, in a multi-claim/multi-party action." District courts have discretion to certify orders for immediate appeal, *Curtiss-Wright Corp. v. Gen. Elec. Co.*, 446 U.S. 1, 10 (1980), but "the district court's decision is not unbounded." *Corrosioneering, Inc. v. Thyssen Env't Sys., Inc.*, 807 F.2d 1279, 1282 (6th Cir. 1986). "[S]ound judicial administration

[8] To the extent Christovero alleges that it has requested certain information and access from Sanguis under Section 6 of the Promissory Note and that Sanguis has not made such information or access available, the Court will order the parties to meet and confer on this issue within thirty days of entry of this Order. Should there continue to be a dispute as to access, Christovero may file the appropriate motion.

does not require that Rule 54(b) requests be granted routinely," *Curtiss-Wright*, 446 U.S. at 10, and implementation of Rule 54(b) is limited to "infrequent harsh case[s]." *Rudd Constr. Equip. Co., Inc. v. Home Ins. Co.*, 711 F.2d 54, 56 (6th Cir. 1983).

To properly certify a case for immediate appellate review, the district court must (1) "direct the entry of final judgment as to one or more but fewer than all the claims or parties [in a case]" and (2) "expressly determin[e] that there is no just reason" for delay. Fed. R. Civ. P. 54(b). The district court must also explain why it "concluded that immediate review of the challenged ruling is desirable." *Adler v. Elk Glenn, LLC*, 758 F.3d 737, 738 (6th Cir. 2014) (citing *Solomon v. Aetna Life Ins. Co.*, 782 F.2d 58, 61–62 (6th Cir. 1986)).

The Court granted Christovero's motion for judgment on the pleadings as to its claim for breach of contract and declaratory judgment against Sanguis, but Christovero's unjust enrichment claim against Sanguis and veil-piercing claim against the Lawless Trust and Dryden remain. This final judgment of two claims, with multiple claims and parties remaining, satisfies the first requirement of Rule 54(b). *See* Fed. R. Civ. P. 54(b). However, the Court nonetheless finds that immediate appeal is not appropriate in this case because there is "just reason for delay." *See id.*

"No precise test exists for determining whether there is a just reason to delay," *Gen. Acquisition*, 23 F.3d at 1030 (quoting Wright, Miller & Kane § 2659), but the Sixth Circuit has laid out a "nonexhaustive list of factors which a district court should consider when making a Rule 54(b) determination":

> (1) the relationship between the adjudicated and unadjudicated claims; (2) the possibility that the need for review might or might not be mooted by future developments in the district court; (3) the possibility that the reviewing court might be obliged to consider the same issue a second time; (4) the presence or absence of a claim or counterclaim which could result in set-off against the judgment sought to be made final; (5) miscellaneous factors such as delay, economic and solvency considerations, shortening the time of trial, frivolity of competing claims, expense and the like.

*Corrosioneering*, 807 F.2d at 1283 (citation omitted).

Christovero contends that each factor counsels in favor of certification, but dedicates the bulk of its analysis to the first and fifth factors. This Court will now analyze each of the *Corrosioneering* factors in turn.

**1. Factor 1: The relationship between the adjudicated and unadjudicated claims**

Under the first factor—the relationship between the adjudicated and unadjudicated claims—"the claims upon which the party seeks final judgment 'should generally be separate and independent [from the other claims remaining] so that the appellate court will not have to consider the same issues again if a second appeal is brought.'" *Johnson v. Synovus Bank*, No. 2:14-cv-2950-STA-dkv, 2015 WL 4988579, at *1 (W.D. Tenn. Aug. 19, 2015) (quoting *Justice v. Pendleton Apartments*, 40 F.3d 139, 141 (6th Cir. 1994)). In evaluating this factor, the Sixth Circuit considers "whether the issue on appeal was at all related to, or dependent on, an issue not presently before the appellate court." *GATX Corp. v. Addison*, 879 F. Supp. 2d 633, 657 (E.D. Ky. 2012) (citing *Corrosioneering*, 807 F.2d at 1282 (concluding that "although indemnity and liability issues are in some sense 'separate and distinct,' they are nevertheless 'related.' Indeed, by its very nature indemnity is collateral to and dependent upon a finding of liability")). The greater the overlap between the adjudicated and unadjudicated claims, the less likely that Rule 54(b) certification is appropriate. *See, e.g.*, *Lowery v. Fed. Express Co.*, 426 F.3d 817, 822 (6th Cir. 2005) (emphasizing that "the interrelationship of the claims themselves weighs heavily against certification").

Christovero argues that the remaining claims—unjust enrichment against Sanguis and corporate veil piercing against Dryden and the Lawless Trust—are distinct from the claims against Sanguis for which Christovero seeks final judgment. [R. 23, pp. 16–17]. However, this argument is misplaced. First, Christovero's unadjudicated claim for unjust enrichment shares a close

relationship with the adjudicated breach of contract claim finding Sanguis liable under the Promissory Note. These claims are not "separate and independent," *Johnson*, 2015 WL 4988579, at *1; both the adjudicated breach of contract claim and the unadjudicated unjust enrichment claim arise out of Christoveros's initial $3,000,000 loan to Sanguis, the Promissory Note, and Sanguis's failure to repay the loan. *Compare* [R. 1, ¶ 62 (Breach of Contract claim) ("As a direct and proximate result of Sanguis's breach of the Promissory Note, Christovero has been damaged in an amount to be proven at trial, consisting of at least $4,014,641.67, the principal and interest due under the Promissory Note as of May 31, 2025, with interest continuing to accrue, plus attorney's fees, court costs, and expenses.")], *with* [R. 1, ¶ 68 (Unjust Enrichment claim) ("If Sanguis is not required to repay Christovero the full principal and interest accrued to date, Sanguis will be unjustly enriched at Christovero's expense in the amount of at least $4,014,641.67, the amount owed as of May 31, 2025, in addition to the reasonable attorney's fees and costs associated with enforcing Christovero's obligations.")]. The "commonality in operative facts" between the breach of contract claims and the unjust enrichment claim "militates against immediate review" of the breach of contract claim. *See Lowery*, 426 F.3d at 823.

The unadjudicated veil-piercing claim and the adjudicated breach of contract claim also share a close factual and legal relationship. Christovero's veil-piercing claim expressly seeks to "impos[e] personal liability on the Lawless Trust and Dryden for Sanguis's direct claims of breach of the Promissory Note and unjust enrichment." [R. 1, ¶ 84]. The veil-piercing claim is not an independent claim that Dryden and the Lawless Trust owe Christovero under the Promissory Note; rather, it seeks to hold Dryden and the Lawless Trust liable for Sanguis's debt. *See id.*; *see also In re Howland*, 674 F. App'x 482, 486 (6th Cir. 2017) (explaining that in Kentucky, "corporate veil piercing governs the vicarious liability of a shareholder for the debts of a corporation") (internal

quotations omitted) (citations omitted). In that sense, the unadjudicated veil-piercing claim is dependent upon the outcome of the adjudicated breach of contract claim—Sanguis must be liable under the Promissory Note for Dryden and Lawless Trust to be held liable for its debt. Thus, although, as Christovero correctly points out, [R. 23, p. 17], the unadjudicated veil-piercing claim does require additional factual findings to determine whether the corporate veil should be pierced, it is nonetheless closely related to the breach of contract claim. Separating these related liability questions would not advance judicial efficiency, and this close relationship weighs against certification. *See, e.g.*, *Corrisioneering*, 807 F.2d at 1282 (explaining that claims can be "separate and distinct" but nonetheless "related" for purposes of Rule 54(b)).

**2. Factor 2: The possibility that the need for review might or might not be mooted by future developments in the district court**

Christovero contends that "[t]here is no likelihood that a determination on these claims might moot review of the judgment on the Promissory Note based on claims currently sought," [R. 23, p. 17], and this Court agrees. Under the second factor of the *Corrisioneering* test, the Court considers "the possibility that the need for review might or might not be mooted by future developments in the district court." *Corrisioneering*, 807 F.2d at 1282. When future developments in the district court on remaining claims might moot the need for appellate review on the adjudicated claim, this factor weighs against certification. *See Carpenter v. Liberty Ins. Corp.*, 850 F. App'x 351, 355 (6th Cir. 2021). Here, however, the resolution of the remaining claims is unlikely to eliminate the need for appellate review of the judgment on the Promissory Note, so the Court finds that this factor weighs in favor of Christovero.

**3. Factor 3: The possibility that the reviewing court might be obliged to consider the same issue a second time**

Christovero asserts that this factor cuts in its favor: " . . . given the distinction between the Promissory Note claims and those remaining to be adjudicated, it is not likely that a reviewing court might be obligated to consider the issues related to interpretation of the Promissory Note a second time." [R. 23, p. 17]. However, as discussed in the analysis of factor one, the distinction between the claim for breach of contract and unjust enrichment is not as sharp as Christovero contends. In the context of factor three, this relatedness leads to "the possibility that the reviewing court might be obliged to consider the same issue a second time." *See Corrosioneering*, 807 F.2d at 1283 (citation omitted) (internal quotation marks omitted).

The availability of unjust enrichment in Kentucky depends in part upon whether an express contract addresses the same issue. *McCarthy v. Ameritech Pub. Inc.*, 763 F.3d 469, 487 (6th Cir. 2014) ("Because unjust enrichment is a quasi-contractual remedy . . . a plaintiff cannot recover for unjust enrichment when an express contract governs the subject matter of the litigation."). Because Christovero's remaining unjust enrichment claim is based on Sanguis's failure to repay the amount due under the Promissory Note, [R. 1, ¶ 68], a later appeal of that claim could require the court of appeals to consider the same contractual obligations whose existence is at issue in the breach of contract claim. The court of appeals would thus "revisit the same facts under a different theory in a second appeal" if the unjust enrichment claim was appealed after adjudication. *See Lowery*, 426 F.3d at 823. This is precisely the type of piecemeal litigation that should be avoided, *see Curtiss-Wright*, 446 U.S. at 8 (discussing "the historic federal policy against piecemeal appeals") (internal quotation marks omitted), and the third factor weighs against entry of final judgment.

**4. Factor 4: The presence or absence of a claim or counterclaim which could result in set-off against the judgment sought to be made final**

The fourth factor is not relevant to this Court's evaluation because there are no claims or counter-claims that could create set-offs against the judgment sought to be made final. *See Carpenter*, 850 F. App'x at 356.

**5. Factor 5: Miscellaneous considerations**

Christovero also argues that Rule 54(b) judgment is appropriate on its breach of contract claim due to "solvency considerations." [R. 23, pp. 17–18]. The fifth factor of the *Corrisioneering* test considers "miscellaneous factors such as delay, economic and solvency considerations, shortening the time of trial, frivolity of competing claims, expense, and the like." *Corrisioneering*, 807 F.2d at 1283 (citation omitted). While it is true that a debtor defendant's potential insolvency weighs "in favor of certification," *Curtiss-Wright*, 446 U.S. at 12, the impact of a debtor's precarious financial position is just one equitable factor out of many for courts to consider. *See, e.g.*, *W. Energy Partners, LLC v. New Energy Co., LLC*, No. 2:02-cv-1264, 2007 WL 1087594, at *3 (S.D. Ohio Apr. 8, 2007) (considering plaintiff's argument that insolvency of borrower might negatively impact its ability to collect under promissory note but ultimately denying the plaintiff's Rule 54(b) motion due to other factors). Even in cases where a party would suffer financial hardship without a Rule 54(b) certification, the balance of equities could still cut against certification. *See, e.g.*, *Carpenter*, 850 F. App'x at 356 ("The Carpenters argue that reversing the Rule 54(b) certification will create delay, and that this delay will cause them significant financial hardship. . . . We are not indifferent to their plight. But, on balance, the other Rule 54(b) factors cut against certification.").

Christovero, relying primarily on a district court opinion from New York, argues that because Sanguis is insolvent, any further delay might hinder Christovero's ability to collect from Sanguis. [R. 23, p. 18]. Although the Court recognizes that Sanguis's potential insolvency might

hinder Christovero from collecting its judgment from Sanguis, Christovero also seeks to pierce the corporate veil, which would allow it to reach the Lawless Trust and Dryden's personal assets to satisfy Sanguis's debt. *See* [R. 1, ¶ 84]. Thus, Sanguis's potential insolvency does not itself establish that there is no just reason for delay, and does not outweigh the concerns of piecemeal litigation implicated by certification in this case. Indeed, a Rule 54(b) certification is a "rare and extraordinary event . . . available only in unique situations where the moving party illustrates that, but for the certification, he would suffer some extreme hardship." *Callahan v. Alexander*, 810 F. Supp. 884, 886 (E.D. Mich. 1993). Without any other allegations of potential hardship or "extraordinary circumstances," Christovero has not demonstrated that its own financial interests should outweigh the judicial administrative interests at issue in this case. *See Novacor Chems. v. GAF Corp.*, 164 F.R.D. 650, 644 (E.D. Tenn. 1996).

In sum, although some factors weigh in favor of certifying the breach of contract claim for appeal, when weighed collectively, the Court finds that the factors counsel against certification. *See Curtiss-Wright Corp.*, 446 U.S. at 8 n.2 ("The court is free to weigh the factors unequally based on a case-by-case basis and need not find that each factor favors certification in order to grant it."). There is just cause to delay entry of final judgment as to the breach of contract claim, and Christovero's motion on that issue is denied.

**D. Lifting Previous Stay of Discovery**

Lastly, the Court previously ordered the stay of discovery in this case "pending resolution of the parties' Cross-Motions for Judgment on the Pleadings." [R. 39]. In that order, the Court also ordered Defendants Dryden and the Lawless Trust to file answers to the Verified Complaint, *id.*, which they have since done, *see* [R. 40]; [R. 42]. Accordingly, and with the parties' motions for judgment on the pleadings resolved, the Court will lift its previous stay of discovery and direct the

Clerk to enter the Court's Standing Case Management and Referral Order for appropriate assignment to a United States Magistrate Judge.

## IV. CONCLUSION

For these reasons, the Court will grant in part and deny in part Christovero's motion for judgment on the pleadings on Counts I and III of the Complaint and will deny Sanguis's countermotion. Accordingly, and the Court being otherwise sufficiently advised,

**IT IS HEREBY ORDERED** as follows:

1. Plaintiff Christovero, LLC's Motion for Judgment on the Pleadings Respecting Counts I and III of its Complaint Against Sanguis Diagnostics Corporation and the Counterclaim for Declaratory Relief Asserted by Sanguis Diagnostics Corporation Against Plaintiff, [**R. 23**], is **GRANTED in PART and DENIED in PART**.

    a. The Motion is **GRANTED** to the extent it seeks judgment on Count I in the amount of $4,296,216.13 as of February 27, 2026, comprised of $3,000,000 principal, term interest in the amount of $383,726.21, and default interest in the amount of $912,489.92.

    b. The Motion is **GRANTED** to the extent it seeks declaratory relief under Count III that until the amounts due and owing under the Promissory Note are paid in full:

        i. Sanguis shall permit Christovero and any person Christovero may designate to review all feasibility reports, studies, analysis, and all books and records, reports, accounts, and other financial documents of Sanguis and to copy the same and to make excerpts therefrom, all at such reasonable times and as often as Christovero may reasonably

request, so long as such review and copying does not unreasonably interfere with the business of Sanguis.

ii. Sanguis will not without the prior written consent of Christovero, directly or indirectly, (i) pay any dividends or make any distributions on, or repurchase any share of, its capital stock; (ii) create, assume, incur or in any manner become liable for or suffer to exist any indebtedness for money borrowed to any person or entity other than Christovero or any subsequent holders; (iii) create, assume or suffer to exist any security interest, lien, charge or other encumbrance in favor of any individual or entity other than Christovero of any subsequent holders; (iv) approve the voluntary liquidation or dissolution of the Company (or any subsidiary), a sale of all or substantially all of the Company's assets, a merger or consolidation of the Company with any other company, or a lease or exclusive license of the Company's assets; (v) authorize, create (by reclassification or otherwise), or issue any new class or series of shares or debt security; (vi) make any expenditure in excess of Twenty Five Thousand Dollars ($25,000) that is not in compliance with the annual budget approved by Sanguis; (vii) approve or enter into any related party transactions (including, but not limited to, any amendment of Company certificate of formation, bylaws, or shareholders agreement).

c. The Motion is **GRANTED** to the extent it seeks judgment on Sanguis's counterclaim for declaratory relief.

d. The Motion is **DENIED** to the extent it seeks final certification for immediate appellate review under Rule 54(b).

2. Defendant Sanguis Diagnostics Corporation's Counter-Motion of Sanguis for Judgment on the Pleadings, [**R. 29**], is **DENIED**.

3. The Court's previous stay of discovery, [**R. 39**], is **LIFTED**.

4. To the extent the parties continue to disagree regarding the information and access requested by Christovero and whether Sanguis has made such information or access available, the parties **SHALL** meet and confer on this issue within thirty days of entry of this Order. Should there continue to be a dispute as to access, Christovero may file the appropriate motion.

5. The Clerk of Court is **DIRECTED** to enter the Court's Standing Case Management and Referral Order for appropriate assignment to a United States Magistrate Judge.

This the 26th day of October, 2026.

CLARIA HORN BOOM,
UNITED STATES DISTRICT COURT JUDGE
EASTERN AND WESTERN DISTRICTS OF
KENTUCKY